**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

USDC - GREENBELT
'26 NOV 6 PM3:56

DARRIUS JORDAN

Petitioner,

v.

WARDEN OF WCI,
MARYLAND ATTORNEY GENERAL,

Respondents.

Civil Action No.: 1:24-cv-1510-LKG

Dated: November 5, 2026

**MEMORANDUM OPINION**

Respondents filed an Answer to Petitioner Darrius Jordan's Petition for Writ of Habeas Corpus which he filed pursuant to 28 U.S.C. § 2254. Respondents assert, in part, that Jordan has raised claims that are procedurally defaulted. ECF No. 6. Although this Court issued an Order on July 18, 2024, granting Jordan 28 days to file a Reply to the Answer, he has filed nothing further in this case. ECF No. 7. This matter is ripe for this Court's review; no hearing is required. *See* Rule 8(a), *Rules Governing Section 2254 Cases in the United States District Courts* and Local Rule 105.6 (D. Md. 2025); *see also Fisher v. Lee*, 215 F.3d 438, 455 (4th Cir. 2000) (petitioner not entitled to a hearing under 28 U.S.C. § 2254(e)(2)). For the reasons stated below, the Petition will be denied and a certificate of appealability shall not issue.

## I. BACKGROUND

Jordan was indicted on charges of murder, conspiracy to commit murder, use of a firearm in the commission of a crime of violence, and two counts of first-degree assault in Baltimore City following the February 12, 2021 shooting death of Guy Leon Thomas. ECF No. 6-1 at 28-29. The Maryland Court of Special Appeals, now the Appellate Court of Maryland, summarized the underlying facts of the case as follows:

> In February 2021, an unlicensed cab driver drove Jordan to Uptown Liquors, a bar and liquor store located at 1901 Edmondson Avenue in Baltimore City. Jordan sat in the rear of the vehicle, and a man known as "Black" sat in the passenger seat. Upon arrival at Uptown Liquors, Black and Jordan were

> approached by Guy Thomas, and the three of them engaged in a minor drug deal. Thomas warranted that he did not have much money, so Black and Jordan "fronted" him enough cash for the deal to happen. Jordan and Thomas then entered the bar; Black remained outside.
>
> Once inside, Jordan observed Thomas purchase a drink with money he had just claimed not to have. This angered Jordan, causing him to hit, kick, and stomp Thomas. This attack ended when the bartender Susan Chase told Jordan to stop. At trial, Chase testified that Jordan told Thomas "he wasn't going to hit him no more" because he had promised Chase he wouldn't. Thomas apologized to Jordan, Jordan purchased a beer, and the two men left the bar shortly thereafter.
>
> Black was still outside when Jordan and Thomas exited. As they approached Black, Jordan insisted that Thomas apologize to Black. At trial, Jordan testified that he and Thomas were each telling Black their version of events when Thomas told Jordan to "shut up." In response, Jordan "hit him again." Thomas fell to the ground, and Jordan "kicked him a couple of times." Black then pulled out a handgun and fired three shots at Thomas, killing him.

ECF No. 6-1 at 72-73. *Jordan v. State*, No. 411, Sept. Term 2022 (Dec. 2, 2022).

Jordan's jury trial began on March 23, 2022, but ended in a mistrial[1] on that day and began again the following day with a new jury. ECF No 6-3 and ECF No. 6-4. On March 29, 2022, the jury found Jordan guilty of two counts of second-degree assault and not guilty on all other counts of the indictment. ECF No. 6-7 at 170-72.

Evidence presented to the jury at trial included video footage from inside the store where Jordan and Thomas initially engaged in an altercation; footage outside the liquor store, which is also frequently referenced as a bar, where the shooting took place; (ECF No. 6-4 at 260-71; ECF No. 6-5 at 83- 90); and police body-worn video of the crime scene taken from the first officer to arrive on the scene (ECF No. 6-5 at 49-56). Additionally, the jury viewed a video of a statement Jordan gave to the police after he was arrested. ECF No. 6-5 at 108; 127-272; ECF No. 6-6 at 8-37. The State also provided testimony from the medical examiner, who explained where Thomas' was hit with the bullets fired by "Black" and that injuries from the assault by Jordan could not be discerned given the timing of his death shortly after the assaults occurred.

Jordan explained during his interview with police that he gave Thomas two dollars because he told Jordan that he did not have any money, but when they went into the bar, Thomas

[1] A member of the victim's family who was seated in the gallery stood up during the playback of the 911 call, threatened Jordan, and attempted to assault him in view of the jury. ECF No. 6-3 at 41.

pulled out money; he told Thomas he had to apologize to the man in the car who had also given him money. ECF No. 6-5 at 133. Jordan also said during the course of the interview that Thomas was "dead because he lied about money" after detectives told Jordan that Thomas was dead because of him. *Id.* at 172. Although Jordan initially maintained that he did not know the shooter and did not act in concert with him in any way, he stated during the course of the interview that he hit Thomas when they were outside of the bar because "Black," the trigger man, told him to do so. *Id.* at 228. Jordan adamantly denied participating in the murder in any way, insisted that he did not know the man who shot Thomas, and repeatedly stated that he did not call 911 because he was told by "Black" to keep his mouth shut, implying he would be killed if he spoke to police. ECF No. 6-6 at 8-23.

Jordan claimed while testifying at trial that he assaulted Thomas inside the bar because he saw Thomas remove money from his pocket that was more than what he had represented that he had when he asked for money prior to going inside the bar. When Jordan confronted Thomas about the money, Thomas allegedly told Jordan it was none of his business how much money he had, prompting Jordan to assault him for lying to him. ECF No. 6-6 at 208-9; ECF No. 6-7 at 30-31. Jordan then explained that he assaulted Thomas when they were outside the bar because Thomas interrupted Jordan when he was telling Black what occurred inside the bar. *Id.* at 213-14. Jordan testified that Thomas told Black that Jordan had overreacted and attacked him for no reason and when Jordan said Thomas was lying, Thomas told him to shut up. *Id.* at 213-14. He explained, "when I was talking to "Black," Guy [Thomas] just interrupts me, and begins to tell me his version of what happened . . . that's why me and him got into [it] again." *Id.* at 214. Under cross-examination Jordan admitted that he "re-initiated the fight" after he and Thomas left the bar because Thomas told him to shut up. ECF No. 6-7 at 56.

After the jury found Jordan guilty on two counts of second-degree assault, the court imposed two consecutive 10-year terms of incarceration on April 21, 2022. ECF No. 6-1 at 73; ECF No. 6-8 at 30-31.[2] On direct appeal Jordan raised three claims: (1) "Did the trial court err in imposing sentences for two counts of second degree assault?" (2) "Was there an ambiguity in the jury's verdict which must be resolved in favor of a finding that both convictions were predicated

[2] At sentencing, the trial court noted that, "[t]here was sufficient time in between and what appeared to be from the evidence presented, additional or separate motivations for the second assault that occurred outside of the building." ECF No. 6-8 at 28.

upon the same facts, thereby limiting sentencing to a single count?" and (3) "Under a proper application of the unit of prosecution, must this incident be deemed to give rise to only a single commission of second degree assault?" ECF No. 6-1 at 38. The Court of Special Appeals held that, "Although the assaults occurred in close proximity to each other, they were two separate acts, with different motivations, that did not adjoin or overlap in time. The charges, therefore, were based on distinct acts rather than one single and continuous course of conduct." *Id.* at 74. Further, the appellate court found the jury's verdict to be "unambiguously based on distinct acts." *Id.* The trial court instructed the jury to consider each charge separately; the prosecutor described to the jury what acts constituted each assault; and the jury was asked separate questions pertaining to each assault. *Id.* Jordan did not seek certiorari review of the Appellate Court's decision rejecting his claims.

On May 6, 2022, Jordan filed a Motion to Reduce/Modify Sentence with the Circuit Court for Baltimore City. ECF No. 6-1 at 30-31. The motion contained a request that it be held *sub curia* for "such other further evidence and documentation that would be presented at a hearing on this matter, should the Court consider this modification." *Id.* at 31. That motion remained pending at the time Jordan filed his Petition with this Court.[3]

In his Petition filed with this Court, Jordan asserts four claims. ECF No. 1 at 6. His claims are that: (1) he was improperly convicted of two separate counts of second-degree assault for one fist fight; (2) the sentence imposed was over his guidelines in light of the lack of prior felony convictions;[4] (3) his sentence is unjustifiable and should be reviewed; and (4) the jury instructions made it seem like there were two separate fights when there was only one fight. *Id.*

---

[3] Under the Fourth Circuit's holding in *Mitchell v. Green*, 922 F.3d 187 (4th Cir. 2019) a motion to reduce sentence filed pursuant to Md. Rule 4-345 tolls the one-year limitations period under 28 U.S.C. § 2244(d)(2) because "a Maryland Rule 4-345 motion to reduce sentence 'is not part of the direct review process' and 'undoubtedly calls for 'review' of the sentence.'" *Id.* at 195 quoting *Wall v. Kholi*, 562 U.S. 545, 555 (2011). Thus, Respondents' argument that the Petition is untimely is without merit. *See* ECF No. 6 at 17-18, n. 3.

[4] Jordan appears to take issue with comments made by the trial court that the second assault of the victim by Jordan was the cause of his death and refers this Court to the sentencing transcript. The sentencing transcript shows that that the trial judge was describing the second assault when she remarked that Jordan "started the attack that ultimately led to the death of Mr. Thomas, because quote, 'He lied to me. He lied to me about the money. He shouldn't of lied to me about my money, and he needed to be taught a lesson.'" ECF No. 6-8 at 29-30. The trial judge described Jordan's conduct as "outrageous and vicious." *Id.* at 30.

## II. Standard of Review

An application for writ of habeas corpus may be granted only for violations of the Constitution or laws of the United States. 28 U.S.C. § 2254(a). The federal habeas statute at 28 U.S.C. § 2254 sets forth a "highly deferential standard for evaluating state-court rulings" *Lindh v. Murphy*, 521 U.S. 320, 333 n.7 (1997); *see also Bell v. Cone*, 543 U.S. 447 (2005). The standard is "difficult to meet," and requires courts to give state-court decisions the benefit of the doubt. *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) (internal quotation marks and citations omitted); *see also White v Woodall,* 572 U.S.415, 419-20 (2014), quoting *Harrington v. Richter*, 562 U.S. 86, 103 (2011) (state prisoner must show state court ruling on claim presented in federal court was "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fair minded disagreement.").

A federal court may not grant a writ of habeas corpus unless the state's adjudication on the merits: 1) "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States"; or 2) "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). A state adjudication is contrary to clearly established federal law under § 2254(d)(1) where the state court 1) "arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law," or 2) "confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to [the Supreme Court]." *Williams v. Taylor*, 529 U.S. 362, 405 (2000).

Under the "unreasonable application" analysis required by § 2254(d)(1), a "state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington*, 562 U.S. at 101 (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). Thus, "an unreasonable application of federal law is different from an incorrect application of federal law." *Id.* at 785 (internal quotation marks omitted).

Further, under § 2254(d)(2), "a state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance." *Wood v. Allen*, 558 U.S. 290, 301 (2010). "[E]ven if reasonable minds reviewing the record might disagree about the finding in question," a federal habeas court may not conclude

that the state court decision was based on an unreasonable determination of the facts. *Id.* "[A] federal habeas court may not issue the writ simply because [it] concludes in its independent judgment that the relevant state-court decision applied established federal law erroneously or incorrectly." *Renico v. Lett,* 559 U.S 766, 773 (2010).

The habeas statute provides that "a determination of a factual issue made by a State court shall be presumed to be correct," and the petitioner bears "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1). "Where the state court conducted an evidentiary hearing and explained its reasoning with some care, it should be particularly difficult to establish clear and convincing evidence of error on the state court's part." *Sharpe v. Bell*, 593 F.3d 372, 378 (4th Cir. 2010). This is especially true where state courts have "resolved issues like witness credibility, which are 'factual determinations' for purposes of Section 2254(e)(1)." *Id.* at 379.

Where a petitioner has failed to present a claim to the highest state court with jurisdiction to hear it, whether it be by failing to raise the claim in post-conviction proceedings or on direct appeal, or by failing to timely note an appeal, the procedural default doctrine applies. *See Coleman v. Thompson*, 501 U.S. 722, 749-50 (1991) (failure to note timely appeal); *Murray v. Carrier*, 477 U.S. 478, 489-91 (1986) (failure to raise claim on direct appeal); *Murch v. Mottram*, 409 U.S. 41, 46 (1972) (failure to raise claim during post-conviction); *Bradley v. Davis*, 551 F. Supp. 479, 481 (D. Md. 1982) (failure to seek leave to appeal denial of post-conviction relief). A procedural default also may occur where a state court declines "to consider the merits [of a claim] on the basis of an adequate and independent state procedural rule." *Yeatts v. Angelone*, 166 F.3d 255, 260 (4th Cir. 1999).

The Fourth Circuit has explained:

> If a state court clearly and expressly bases its dismissal of a habeas petitioner's claim on a state procedural rule, and that procedural rule provides an independent and adequate ground for the dismissal, the habeas petitioner has procedurally defaulted his federal habeas claim. *See Coleman v. Thompson*, 501 U.S. 722, 731-32 (1991). A procedural default also occurs when a habeas petitioner fails to exhaust available state remedies and "the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred." *Id.* at 735 n.1.

*Breard v. Pruett*, 134 F.3d 615, 619 (4th Cir. 1998).

If a procedural default has occurred, a federal court may not address the merits of a state prisoner's habeas claim unless the petitioner can show (1) both cause for the default and prejudice that would result from failing to consider the claim on the merits, or (2) that failure to consider the claim on the merits would result in a miscarriage of justice, *i.e.* the conviction of one who is actually innocent.[5] *See Murray v. Carrier*, 477 U.S. 478, 495-96 (1986); *Breard*, 134 F.3d at 620. "Cause" consists of "some objective factor external to the defense [that] impeded counsel's efforts to raise the claim in state court at the appropriate time." *Id.* (quoting *Murray*, 477 U.S. at 488). Even where a petitioner fails to show cause and prejudice for a procedural default, a court must still consider whether it should reach the merits of a petitioner's claims in order to prevent a fundamental miscarriage of justice. *See Schlup v. Delo*, 513 U.S. 298, 314 (1995).

## III. ANALYSIS

Two of the four claims raised by Jordan in this Court (Claim 1 challenging his conviction on two separate counts of assault and Claim 2 asserting his sentence was imposed in excess of his guideline range) were presented to the Appellate Court of Maryland on direct appeal unsuccessfully. Once his appeal was denied by the intermediate appellate court, he had 15 days to file a petition for writ of certiorari to seek further review by the Supreme Court of Maryland. *See* Md. Rule 8-302. Jordan did not file such a petition and the time for doing so has long since expired. Because Jordan did not raise these two claims on direct appeal, he may not do so now. When a state corrective process is unexhausted and is no longer available, a procedural default has occurred.[6] Thus Jordan's first and second claims are procedurally defaulted.

---

[5] Habeas petitioners may use an actual innocence claim to excuse the procedural default of a separate constitutional claim upon which they request habeas relief. *See Murray v. Carrier*, 477 U.S. at 496. "[When] a constitutional violation has probably resulted in the conviction of one who is actually innocent, a federal habeas court may grant the writ even in the absence of a showing of cause for the procedural default." *Id.*; *see also Reid v. True*, 349 F.3d 788, 806 (4th Cir. 2003). Petitioners who wish to use a claim of actual innocence as a gateway to raising an otherwise defaulted constitutional claim must demonstrate by a preponderance of the evidence that a reasonable juror could not have convicted the petitioner in light of the new evidence. *See Buckner v. Polk*, 453 F.3d 195, 199-200 (4th Cir. 2006). Jordan has not raised an actual innocence claim.

[6] While it is true that Jordan may still file a post-conviction petition with the Circuit Court for Baltimore City, the claims asserted here are not appropriate claims for a post-conviction challenge as they have already been unsuccessfully, finally litigated. *See* Md. Code Ann., Crim. Proc. §§ 7-102(b)(2), 7-106(a).

The remaining two claims, that the jury instructions were improper and that his sentence should be reviewed, could have been raised on direct appeal but were not. Both are therefore unexhausted. Additionally, the claim regarding jury instructions is raised for the first time in this Court; no state court has had the opportunity to review such a claim. Thus, even if these two claims were appropriate ones to consider for federal habeas relief, they are unexhausted and now procedurally defaulted because Jordan could have raised both of these issues in his direct appeal and failed to so: the merits may not be reached.

Here, Jordan has offered no basis to excuse the procedural default so that this Court may reach the merits of his claims, nor does it appear from the record before this Court that reaching the merits of these claims is necessary in order prevent a fundamental miscarriage of justice. Accordingly, the Petition must be dismissed. When a district court dismisses a habeas petition solely on procedural grounds, a certificate of appealability will not issue unless the petitioner can demonstrate both "(1) 'that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right' and (2) 'that jurists of reason would find it debatable whether the district court was correct in its procedural ruling.'" *Rose v. Lee,* 252 F.3d 676, 684 (4th Cir. 2001) (quoting *Slack v. McDaniel,* 529 U.S. 473, 484 (2000)). Jordan may still request that the United States Court of Appeals for the Fourth Circuit issue such a certificate. *See Lyons v. Lee*, 316 F.3d 528, 532 (4th Cir. 2003) (considering whether to grant a certificate of appealability after the district court declined to issue one).

A separate Order follows.

November 5, 2026
Date

LYDIA KAY GRIGGSBY
United States District Judge